IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     Plaintiff,<br><br>v.<br><br>RAHMON ALLEN, *et al.*,<br><br>     Defendants. | Case No. 12-00291-18/20-CR-W-GAF |

**THE GOVERNMENT'S TRIAL MEMORANDUM**

The Government submits this Trial Memorandum to provide background and address certain issues the Government anticipates may arise during trial.

I. **INTRODUCTION**[1]

Defendant Rahmon Allen is charged with a conspiring with Andre Taylor and others to distribute marijuana. Mr. Allen was part of a large drug conspiracy.

Beginning in at least 2010 through at least 2014, Andre Taylor was the head of a major cocaine and marijuana distribution organization in the Kansas City metropolitan area. A Mexico-based cartel supplied narcotics to his drug trafficking organization. Taylor's relatives and others assisted him in recruiting buyers and arranging sales. His base of operation was in the 2300 block of Hardesty in Kansas City, Missouri, where his family owned three houses next door to each other. Confidential informants participated in numerous controlled buys of narcotics. Many of those buys took place in, around, or outside of the three Taylor houses.

During the investigation, agents were authorized by the Court to intercept wire and electronic communications on Andre Taylor's and others' telephones. Many communications

---

[1] The information set forth herein are based on evidence that the Government believes will be admitted at trial.

refer to drug transactions. In intercepted telephone conversations, Taylor boasted of spending millions you buy drugs to sell within the Kansas City area.

Twenty defendants were indicted in the Second Superseding Indictment. Fifteen pled guilty.[2] Three were tried before the Honorable Judge Fenner in September 2014; two of the three were found guilty.[3] Their convictions were affirmed. *See United States v. Taylor*, 813 F.3d 1139 (8th Cir. 2016). Two took flight, including this defendant. Charlie Williams is still at large (probably in Mexico).

## II. **FACTUAL BACKGROUND**

A court-authorized wiretap investigation of Andre Taylor's three telephones revealed an extensive drug dealing operation involving powder cocaine, high-grade marijuana, and even some heroin. Investigators also identified Mr. Taylor's local connection with a Mexico-based supplier. In fact, Mr. Taylor's intercepted calls show that he traveled to Mexico to buy drugs for resale within the Kansas City area. The interceptions also reveal how Taylor's relatives and others assisted him with his drug trafficking.

On September 27, 2012, search warrants were executed at the three homes owned by the Taylor family at 23rd and Hardesty. Marijuana was seized from all three locations. In addition, on November 30, 2012, defendant Ruben Machiche consented to the search of his truck and trailer in Nebraska. More than 1,000 pounds of marijuana was recovered from the trailer. According to Machiche, this marijuana was intended for delivery to Andre Taylor.

Allen Sanchez was recruited by the Mexican suppliers to move from El Paso, Texas to Kansas City to assist with narcotics distribution. Several times, Sanchez stored cocaine and

---

[2] Harlan Taylor, Raymond Taylor, Darryl Taylor, Carl Taylor, Robert Taylor, Daniel Howard, Marlon Minton, Tyrone Rock, Allen Sanchez, Rick Schoen, Ruben Machiche, Gregory Johnson, Bryant Willis, Kenneth Vaughn Cooper, and William E. Brown.

[3] Andre Taylor and Victor Vickers were convicted. Eric Union was acquitted.

marijuana at his house for Andre Taylor until Taylor instructed him to deliver it to him. Sanchez also stored large sums of cash for Taylor and assisted with getting cash to the Mexican suppliers.

Robert Taylor was Andre Taylor's partner for drug procurement and distribution. Agents intercepted numerous calls between these two in which they talked about suppliers and plotted their strategy to get cocaine. As explained above, Darryl Taylor and Robert Taylor traveled to Mexico to meet with narcotics sources and facilitate Andre Taylor in obtaining drugs. Robert Taylor assisted Andre Taylor in distributing cocaine to some of the other defendants and others.

In November 2012, Nebraska FBI agents arrested Ruben Machiche, who had been driving a truck with 1,000 pounds of marijuana. Machiche later admitted that the marijuana was intended for redistribution in the Kansas City area. Machiche also admitted that he worked for a "big organization" and had delivered marijuana to Kansas City to Andre Taylor seven or eight times, and he had transported $500,000 to $700,000 in U.S. currency to Arizona for these drug shipments.

Different parties play different roles and operate at different levels in a conspiracy. In this case, Mr. Allen conspired with others, including Charlie Williams, Alan Sanchez, and Ruben Machiche to distribute marijuana. Government Trial Exhibit 168 (attached) is a chart showing Mr. Allen's role in the conspiracy. The Government anticipates that some of Mr. Allen's co-conspirators will testify as cooperators at trial, including Andrew Taylor, Sanchez, Machiche, and Robert Taylor. Other witnesses include Terry Hutton and Daniel Carravelo.

The Government will present evidence as to post-indictment events that show Mr. Allen's consciousness of guilt. After he was indicted in February 2014, he fled and was on the loose for four years until he was captured in January 2018. He had a fake driver's license and credit card on him when captured. In addition, in July 2014, the Government began the process

of administratively forfeiting Mr. Allen's Rolls Royce, which he bought for more than $300,000 and was located in California. As required by law, Mr. Allen was provided notice in multiple ways, including mailing and publication. Mr. Allen refused to accept the mailed notice and made no effort to make a claim to a luxury car that he bought and was titled in his name. In fact, his girlfriend simply turned over the Government without protest.

Finally, the Government will present the testimony of Mr. Allen's former associate and friend, Terry Hutton. Mr. Hutton is expected to testify that:[4]

1. He and Mr. Allen were involved in smuggling marijuana and a cell phone into an Oklahoma prison while Mr. Hutton was imprisoned there from December 2015 to September 2017; and

2. Very recently – on May 11, 2019 – Mr. Alan threatened Mr. Hutton that he would kill Mr. Hutton's sister for cooperating with the "feds."

## III. LEGAL ISSUES

### a. Tools of the Trade – Drug Charges

Defendant seeks to exclude photographs of guns and bullets that were seized when search warrants were executed at 2310, 2314, and 2318 Hardesty Avenue in Kansas City, Missouri. The Government objects. *See* Doc. #894, 909. At the pretrial conference on August 16, 2019, the Honorable Judge Bough addressed various pretrial matters. The Government informed the Court that it would file its objections post-conference; defendant indicated they would file a reply. *See* Doc. #909, #912. Thus, the Court has not yet ruled on the admissibility of those photographs of guns and weapons. *See* Doc. #911.

Weapons are generally "tools of the trade" and admissible with respect to criminal drug charges. *See United States v. Espinoza*, 684 F.3d 766, 779 (8th Cir. 2012) (*citing United States v.*

---

[4] Out of an abundance of caution, the Government filed a notice that this evidence was "inextricably intertwined" with the charged conduct; alternatively, it was admissible under Rule 404(b). The Honorable Judge Bough held that this evidence was admissible. *See* Doc. #911.

4

*Caballero*, 420 F.3d 819, 821 (8th Cir. 2005)). As in this case, the defendant in the *Espinoza* case was not charged with weapons offenses.[5] The Eighth Circuit held, however, that "any risk that the jury might have unfairly assumed that [defendant] illegally possessed the guns was adequately mitigated by the district court's cautionary instruction that 'there [were] no charges against the defendant involving anything related to firearms.'" *Id.*

### b. Witness Impeachment Issues

Federal Rule of Evidence 608(b) governs evidence that goes to a witness's character for truthfulness or untruthfulness. It provides in pertinent part:

> Except for a criminal conviction under Rule 609, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of: (1) the witness; or (2) another witness whose character the witness being cross-examined has testified about.

The purpose of the rule is to "avoid holding mini-trials on peripherally related or irrelevant matters." *United States v. Martz*, 964 F.2d 787, 789 (8th Cir. 1992).

The Eighth Circuit has emphasized the rule's plain language, to the effect that while a party may inquire of a witness concerning matters which go to the witness's character for truthfulness, the examiner may not thereafter seek to impeach the witness's answer with extrinsic evidence, but must take the answer of the witness. *See United States v. Swanson*, 9 F.3d 1354, 1358 (8th Cir. 1993); *United States v. Johnson*, 968 F.2d 765, 766-767 (8th Cir. 1992); *United States v. Capozzi*, 883 F.2d 608 (8th Cir. 1989).

---

[5] In *Espinoza*, the weapons were found in defendant's home, which is not the case here. However, Mr. Allen is linked to the homes where the weapons were found because he is charged with conspiring with others connected to those homes.

5

Another evidentiary rule, Federal Rule of Evidence 613, governs witness's prior statements:

> (a) **Showing or Disclosing the Statement During Examination.** When examining a witness about the witness's prior statement, a party need not show it or disclose its contents to the witness. But the party must, on request, show it or disclose its contents to an adverse party's attorney.
>
> (b) **Extrinsic Evidence of a Prior Inconsistent Statement.** Extrinsic evidence of a witness's prior inconsistent statement is admissible only if the witness is given an opportunity to explain or deny the statement and an adverse party is given an opportunity to examine the about it, or if justice so requires. . . .

"Rule 613(b) addresses situations where a witness makes two irreconcilable statements, one at trial and one previously." *United States v. Bolzer*, 367 F.3d 1032, 1038 (8th Cir. 2004). Regarding Rule 613(b), the Eighth Circuit also requires that the extrinsic evidence of a prior inconsistent statement must be "material to the substantive issues of the case." *United States v. Allen*, 540 F.3d 821, 826 (8th Cir. 2008); *Bolzer*, 367 F.3d at 1038 ("the subject of the prior inconsistent statement must be material").

Thus, the Eighth Circuit goes beyond Rule 613(b) to restrict a party's ability to use evidence of a prior inconsistent statement: "[O]ur case law adds a restriction not explicitly included Rule 613 itself: Extrinsic evidence of a collateral matter is not admissible." *United States v. Cowling*, 648 F.3d 690, 697 (8th Cir. 2011) (quoting *United States v. Carter*, 410 F.3d 1017, 1022 (8th Cir. 2005)). "A matter is collateral 'if the facts referred to in the statement could not be shown in evidence for any purpose independent of the contradiction.'" *United States v. Bordeaux,* 570 F.3d 1041, 1051-52 (8th Cir. 2009) (quoting *United States v. Roulette*, 75 F.3d 418, 423 (8th Cir. 1996)). Simply because the prior inconsistent statement reflects on the witness's credibility does not make it material and non-collateral. "Whether a matter is material

6

or collateral depends on the subject of the testimony. *Id.* at 1051 (referring to the "precise subject" of the prior inconsistent statement). Moreover, the evidence of a prior inconsistent statement is still subject to the Rule 403 balancing test. *See United States v. Demery*, 674 F.3d 776, 780 (8th Cir. 2011).

We respectfully request that, prior to engaging in any impeachment which might be of questionable relevance, and prior to offering any extrinsic evidence whatsoever for impeachment purposes, counsel for defendant be instructed to alert the Court in a bench conference so that such a matter may be resolved outside the hearing of the jury.

### c. Impeachment by Prior Conviction

With respect to any of the Government's cooperating witnesses with criminal convictions, the Government respectfully requests that the Court direct defense counsel to limit cross-examination of these witnesses to the general nature of the charge, the range of punishment, the sentence imposed, and the fact that the witness hopes to receive a lesser sentence by cooperating. *See United States v. Baldenegro-Valdez,* 703 F.3d 1117, 1123 (8th Cir. 2013). Allowing cross-examination beyond that will lead to "a mini-trial on irrelevant collateral matters." *Id.* To inquire further would be to relitigate the prior conviction which would be confusing, collateral and unfair. *See United States v. Street*, 548 F.3d 618, 627 (8th Cir. 2008).

### d. Prior Consistent Statements

Federal Rule of Evidence 801(d)(1)(B) provides that prior statements by a witness are not hearsay if they meet certain requirements. The Eighth Circuit has held that a statement is admissible under this Rule if: (1) the declarant testifies at trial and is subject to cross-examination; and (2) the statement offered is consistent with the declarant's trial testimony, and was made prior to the alleged fabrication, or prior to the motive or influence which is alleged to

7

have improperly resulted in the "fabricated" testimony. *United States v. Red Feather*, 865 F.2d 169, 171 (8th Cir. 1989); *United States v. Bowman*, 798 F.2d 333, 337-339 (8th Cir. 1986).

If a party contends at trial that a witness's testimony is the result of the witness's discussions or negotiations with the authorities, evidence that the witness made similar statements to others prior to contacts with the authorities logically rebuts the allegations of false testimony, and specifically addresses the precise type of express or implied charge against the declarant of recent fabrication or improper motive referred to by the rule. *See United States v. Barrett*, 937 F.2d 1346 (8th Cir. 1991).

The rule itself is <u>not</u> one providing "exceptions" to the general rule against hearsay; Rule 801(d) instead provides that such statements are <u>not</u> hearsay. Accordingly, such a statement can be utilized as substantive evidence, and the jury may be so instructed. *Tome v. United States,* 513 U.S. 150 (1995); *United States v. White*, 11 F.3d 1446, 1450 (8th Cir. 1993).

### e. <u>Summary Charts and Timelines</u>

The Eighth Circuit has explained that "[t]he admissibility of summary charts, graphs, and exhibits 'rests within the sound discretion of the trial judge, whose action in allowing their use may not be disturbed by an appellate court except for an abuse of discretion.'" *United States v. Green*, 428 F.3d 1131, 1134 (8th Cir. 2005) (quoting *United States v. King*, 616 F.2d 1034, 1041 (8th Cir. 1980)).

Federal Rule of Evidence 1006 permits a party to use a summary or chart at trial if its requirements are met. Summaries charts have been permitted in numerous cases. *See, e.g., United States v. Boesen*, 541 F.3d at 848 (summary of clinic billings); *United States v. Green*, 428 F.3d at 1133 (summaries of records from SBC Communication and Dell Computers); *United States v. Wainright*, 351 F.3d at 820 (summaries of logging activities and bank records); *United States v.*

*Possick*, 849 F.2d at 339 (summaries of drug transactions and volume of phone calls, flow chart of organization).

In *United States v. Green*, the Eighth Circuit explained that Rule 1006 summary charts can be treated as evidence and provided to the jury during deliberations. However, the court should issue a limiting instruction. 428 F.3d at 1133; *see also* 8th Cir. Crim. Jury Instr. § 4.12.

In addition, Federal Rule of Evidence 611(a) also supports the admission of summary charts and timelines. Rule 611(a) provides that the court should exercise reasonable control over the mode of presenting evidence so as to, among other things, make the procedures effective for determining the truth, and avoid wasting time. The use of a pedagogic aid, such as a time line, can further these goals. The Eighth Circuit has explained that "[v]isual aids that summarize other evidence are generally permissible pedagogic devices, especially when used to organize complex testimony or transactions for the jury." *United States v. Crockett*, 49 F.3d 1357, 1360-61 (8th Cir. 1995). Aids such as time lines should be permitted as long as they are not "unfair and misleading" but are "straightforward and accurate." *United States v. Possick*, 849 F.2d at 339.

At this point, the United States anticipates using three charts, which are attached, at trial to aid the jury:[6]

    A. Operation Diamond Posse Organizational Chart (Trial Exhibit 168)

    B. Operation Diamond Posse TIII Organizational Chart (Trial Exhibit 168)

    C. Weights and Measurements Chart (Trial Exhibit 180)

The United States anticipates that Task Force Officer Mark Corbin, who will be at counsel table throughout trial, will testify regarding these charts.

---

[6] The United States reserves the right to edit these exhibits to conform to the evidence.

In addition, the United States reserves the right to offer additional summary charts and timelines that will comply with the requirements of the Court and Federal Rules of Evidence.

### f. The Government Does Not Need to Prove an Overt Act

Mr. Allen is charged with conspiring to distribute marijuana. The elements of this charge, as set forth in the United States' proposed jury instruction, are:

*One,* between or about February 1, 2010 and February 25, 2014, two or more people reached an agreement to distribute a mixture containing marijuana, a Schedule I controlled substance;

*Two,* the defendant voluntarily and intentionally joined in the agreement, either at the time it was first reached or at some later time while it was still in effect;

*Three,* at the time the defendant joined in the agreement, the defendant knew the purpose of the agreement; and

*Four,* the agreement involved 1000 kilograms or more of a mixture containing a detectable amount of marijuana.

The Supreme Court has held that the Government does not have to prove that the defendant committed an overt act in furtherance of the conspiracy. *United States v. Shabani*, 513 U.S 10, 15 (1994); *Whitfield v. United States*, 543 U.S. 209, 214 (2005). Based on the Supreme Court's decision in *Shabani,* the Eighth Circuit has held that "proof of an overt act is not necessary to establish a violation of the drug conspiracy statute." *United States v. White*, 408 F.3d 399, 401 (8th Cir. 2005)

## **CONCLUSION**

The Government will provide more information and address any additional issues identified by the Court before or during trial.

> Respectfully submitted,
>
> Timothy A. Garrett
> United States Attorney
>
> By    */s/ Lucinda S. Woolery*
> Stefan C. Hughes #40239
> Cindi S. Woolery #36625
> Assistant United States Attorneys
> Charles Evans Whittaker Courthouse
> 400 East 9th Street, Fifth Floor
> Kansas City, Missouri 64106
> Telephone: (816) 426-3122

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was filed on this 22nd day of August 2019, by electronic notice on those parties having entered their appearance under the Electronic Filing System (ECF).

*/s/ Lucinda S. Woolery*
Assistant United States Attorney